**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

| | | |
|---|---|---|
| **TY CRISWELL**, *et al.*, | ) | |
|     **Plaintiffs,** | ) | |
| | ) | |
| **vs.** | ) | **CIVIL ACTION 14-00447-KD-N** |
| | ) | |
| **MOBILE HOUSING BOARD and** | ) | |
| **MOBILE COUNTY PERSONNEL BOARD,** | ) | |
|     **Defendants.** | ) | |

**ORDER**

This matter is before the Court on Defendant Mobile Housing Board (Housing Board)'s Motion for Summary Judgment (Docs. 51-52, 58, 59, 66), Defendant Mobile County Personnel Board (Personnel Board)'s Motion for Summary Judgment (Docs. 54, 55, 59), Plaintiffs' Response (Docs. 73, 75), the Housing Board's Reply (Docs. 78, 80), and the Personnel Board's Reply (Doc. 79).[1]

**I.**    **Findings of Fact[2]**

**A.**    **The Parties**

Plaintiffs are Alabama residents who were former hourly employees of the Housing Board's Maintenance Department and civil service merit system employees. (Doc. 69 at 3-4; Doc. 52-1 (Decltn. Dees (Personnel Board Executive Director)); (Doc. 58-1 at 2 (Decltn. Bryant)

---

[1] The following claims were voluntarily dismissed with prejudice by the plaintiffs: 1) Plaintiff Weaver's FLSA claim and state law claims for breach of contract, intentional misrepresentation/fraud, promissory fraud/false promise, promissory estoppel and equitable estoppel, against both defendants; 2) all of the Plaintiffs' ADEA/AADEA claims against the Personnel Board; 3) all of the Plaintiffs' claims ERISA claims against both defendants; and 4) all of the Plaintiffs' ADA claims against both defendants. (Docs. 50, 57).

[2] On summary judgment, the Court must "resolve all issues of material fact in favor of the [non-movant], and then determine the legal question of whether the [movant] is entitled to judgment as a matter of law under that version of the facts." McDowell v. Brown, 392 F.3d 1283, 1288 (11th Cir. 2004).

(Housing Board Human Resources Coordinator).[3]  Defendant Housing Board is a public body comprised of five (5) commissioner appointed by the Mayor of the City of Mobile, chartered under Alabama law to provide and administer affordable housing programs for local citizens, and created and maintained per the Housing Authorities Law, Ala. Code § 24–1–1, *et seq.*  (Doc. 66-1 at 1 (Decltn. Vaughn (Housing Board Executive Director)); Doc. 69 at 2; Doc. 58-1 at 2 (Decltn. Bryant)). Defendant Personnel Board of Mobile County, Alabama, is an organization created by the Alabama Legislature, Local Act 470 (1939), which governs and controls individuals in the Classified Service.  (Doc. 69 at 3; Doc. 52-2 at 2; Doc. 52-1 at 1 (Decltn. Dees)).

## B.   Employment at the Housing Board

Plaintiffs were long-time hourly employees of the Housing Board, when their employment terminated in September 2014; Criswell has been employed since 1991, Knight since 1992, McCord since 1989, Peacock since 1997, Smiley since 2001, and Weaver since 2009.  (Doc. 69 at 4; Docs. 52-4; 52-6; 52-8; 52-10; 52-12, 52-14, 52-16).  Specifically, Plaintiff Weaver was employed as a painter, while Plaintiffs Coffman, Criswell, Knight, McCord, Peacock and Smiley held various jobs over the years but ultimately each became a Public Service Supervisor I or Project Housing Building Maintenance Supervisor (a/k/a Maintenance Supervisor).  (Doc. 52-1 (Decltn. Dees at 6); Docs. 52-4; 52-6; 52-8; 52-10; 52-12, 52-14, 52-16). As Maintenance Supervisors, the Housing Board classified those Plaintiffs as "exempt" for

---

3 A number of declarations submitted by the Housing Board are unsworn.  Federal Rule of Civil Procedure 56 requires that '[a]n affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated. ' Fed. R. Civ. P. 56(c)(4). The advisory committee notes to Rule 56 explain that under Rule 56(c)(4), '[a] formal affidavit is no longer required. 28 U.S.C. § 1746 allows a written unsworn declaration, certificate, verification, or statement subscribed in proper form as true under penalty of perjury to substitute for an affidavit.' Fed. R. Civ. P. 56(c)(4), advisory committee notes (2010 amendments).  However, the declarations of Dees, Bryant and Vaughn -- while not sworn -- are in compliance with 28 U.S.C. § 1746 as such have been submitted "under penalty of perjury," and so can be considered on summary judgment.

purposes of the *Fair Labor Standards Act*.  (Doc. 58-1 at 2 (Decltn. Bryant)).

The Housing Board receives approximately 98% of its funding from the U.S. Department of Housing an Urban Development (HUD).  (Doc. 66-1 at 1 (Decltn. Vaughn)).  In 2013, sequestration was imposed on federal discretionary spending resulting in automatic proration and a mid-year cut of almost 15% to the Housing Board maintenance and management department funding.  (Id.)  In 2014, HUD again prorated its public housing funding to the Housing Board, and the Housing Board underwent a second substantial reduction in funding.  (Id.)  The Housing Board implemented cost saving measures on several occasions, but by the Summer of 2014 could not balance its budget without a lay-off.  (Id.)  The Housing Board management believed it could achieve higher productivity by restructuring its Maintenance Department, moving towards a centralized maintenance operation.  (Id.)  The  Housing Board eliminated middle management represented by the Maintenance Supervisors, whose duties were absorbed by higher level managers, to avoid a lay-off.  (Id.)  The Housing Board selected other employees for lay-offs, which included one (1) painter (out of 12).  (Doc. 66-1 at 1 (Decltn. Vaughn)).

On August 11, 2014, pursuant to Personnel Board procedures, the Housing Board's Executive Director Vaughn formally requested a lay-off list from the Personnel Board, which was provided.  (Doc. 52-1 at 5 (Decltn. Dees)).  Per Rule XIII, the Personnel Board prepared the lay off list, ranking employees within each job classification, based on seniority, service ratings, etc.  (Id.)  This established the order in which employees within each classification must be laid off.  (Id.)  In September 2014, the Housing Board laid-off 12 merit system employees from the following classifications: Housing Manager I, Maintenance Supervisor, Painter, Public Service Worker I, Housing Counselor, Utility Clerk, Office Assistant I.  (Id.)  The lay-offs were implemented in the order mandated by Personnel Board Rules and Local Act 470.  (Id.)

At the time of these lay-offs six (6) Plaintiffs, Coffman, Criswell, Knight, McCord, Peacock and Smiley, were classified as Maintenance Supervisors.  (Doc. 52-1 at 6 (Decltn. Dees)).  The Housing Board laid off six (6) of the seven (7) Plaintiffs per Personnel Board rules and Local Act 470, and laid off one (1) of 12 Painters, Plaintiff Weaver.  (Id.; Doc. 58-1 at 3 (Decltn. Bryant)).  On September 2, 2014, these employees were given 15 days notice, with an effective termination date of September 27, 2014.  (Doc. 58-1 at 3 (Decltn. Bryant)).

**C.    Post-Employment**

Following their termination, Plaintiffs filed a complaint under the Personnel Board's grievance procedure, claiming they had the right to assume lower class positions at the Housing Board in lieu of being laid-off (that they should have been "bumped back" per Personnel Board Rule XIII).   (Doc. 52-1 at 5-6 (Decltn. Dees)).  Their grievances were denied by the Housing Board, which found Rule XIII inapplicable because Plaintiffs were not promoted to their positions through a promotional test but through an "open competitive" process, and thus, did not have the right to a lower classified position in lieu of lay off.  (Id. at 6, 8).

As a result, Plaintiffs initiated this action on September 26, 2014, alleging federal claims for violations of *Fair Labor Standards Act*, as amended, 29 U.S.C. § 201 et seq. (FLSA) (against the Housing Board), the *Age Discrimination in Employment Act,* 29 U.S.C. § 621 et seq. (ADEA) (against the Housing Board), and state claims for violations of the *Alabama Age Discrimination in Employment Act*, Ala. Code § 25-1-20 et seq. (against the Housing Board), breach of contract (against both defendants), intentional misrepresentation/fraud (against both defendants), promissory fraud/false promise (against both defendants), promissory estoppel (against both defendants), and equitable estoppel (against both defendants). (Docs. 1, 6, 38, 69).[4]

_____

4 The Fourth Amended Complaint (Doc. 69) is the operative complaint in this case.

See also Docs. 50, 57.

## II.   Standard of Review

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a).  Rule 56(c) provides as follows:

> *(1) Supporting Factual Positions.* A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:

> **(A)** citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or

> **(B)** showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

> *(2) Objection That a Fact Is Not Supported by Admissible Evidence.* A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence.

> *(3) Materials Not Cited.* The court need consider only the cited materials, but it may consider other materials in the record.

> *(4) Affidavits or Declarations.* An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated.

FED.R.CIV.P. Rule 56(c).

Defendants, as the parties seeking summary judgment, bear the "initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991) (quoting Celotex Corp. v.

Catrett, 477 U.S. 317, 323 (1986)).  If the nonmoving party fails to make "a sufficient showing on an essential element of her case with respect to which she has the burden of proof," the moving party is entitled to summary judgment.  Celotex, 477 U.S. at 323.  "In reviewing whether the nonmoving party has met its burden, the court must stop short of weighing the evidence and making credibility determinations of the truth of the matter.  Instead, the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor."  Tipton v. Bergrohr GMBH-Siegen, 965 F.2d 994, 998-999 (11th Cir. 1992).

### III.   Sham Affidavits

Before turning to the substantive claims, the Court must address the Housing Board's contention that Plaintiffs' summary judgment Declarations are "sham affidavits"[5] which directly contradict their prior sworn deposition testimony regarding management duties.  (Doc. 80 at 5-15).  The Housing Board adds that Plaintiffs' Declarations improperly include conclusions of law concerning management duties, invading the province of the court.  (Id. at 16).

The Court has reviewed Plaintiffs' Declarations (Doc. 75-2 through 75-7) against the deposition testimony cited by the Housing Board (Doc. 80 at 6-15).  The Court is not persuaded that Plaintiffs' Declarations constitute sham affidavits because the Declarations do not *directly* contradict the specific pages of deposition testimony cited.  Instead, the Housing Board appears

---

5 Under the law of this Circuit, we may disregard an affidavit submitted solely for the purpose of opposing a motion for summary judgment when that affidavit is directly contradicted by deposition testimony." McCormick v. City of Fort Lauderdale, 333 F.3d 1234, 1240 n. 7 (11th Cir. 2003); Fisher v. Ciba Specialty Chemicals Corp., 238 F.R.D. 273, 284 (S.D. Ala. 2006) (explaining and applying "sham affidavit" rule).  Specifically, Rule 56(e) of the Federal Rules of Civil Procedure requires that a party opposing a properly supported motion for summary judgment set forth specific facts, admissible as evidence, showing the existence of a genuine issue for trial. The rule specifically allows the court to consider the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits submitted by the opposing party in determining whether a genuine issue exists. However, "[w]hen a party has given clear answers to unambiguous questions which negate the existence of any genuine issue of material fact, that party cannot thereafter create such an issue with an affidavit that merely contradicts, without explanation, previously given clear testimony."  Van T. Junkins & Assoc., Inc. v. U.S. Indus., Inc., 736 F.2d 656, 657 (11th Cir. 1984).  In order to be stricken as a sham, an affidavit must be inherently inconsistent.  See, e.g., Rollins v. TechSouth, Inc., 833 F.2d 1525 (11th Cir. 1987).

to base its argument on a unilateral interpretation of Plaintiffs' deposition testimony – namely, as testimony admitting they engaged in management duties and how they so engaged.  However, the deposition testimony does not directly indicate that Plaintiff's were performing management duties and could just as readily be interpreted by a jury as describing how Plaintiffs dispatched work orders, kept the work flowing to maintenance staff on a daily basis, etc. --- all for work assigned to the staff *by someone else,* with Plaintiffs essentially being a "pass through." Additionally, the Housing Board characterizes Plaintiffs' deposition testimony as conceding that they engaged in supervisory work of crews and assigned work to staff that they controlled.  (Doc. 80 at 4).  However, the deposition testimony could be interpreted as Plaintiffs acting as more of a facilitator than a manager.  There is also no evidence that Plaintiffs created their own work orders or assigned their own work to the staff.  And while Plaintiffs may have attended weekly meetings with the Maintenance Department and monthly meetings with management (Doc. 80 at 8), such attendance does not *de facto* result in Plaintiffs being management.  A reasonable jury could find that Plaintiffs attended such meetings in order to receive their instructions from others who were management.  In short, a jury could find that Plaintiffs were not managers.

Additionally, a comparison of Plaintiffs' deposition testimony and the Declarations reveals they are not clearly or inherently inconsistent.   See, e.g., Fisher v. Ciba Specialty Chem. Corp., 238 F.R.D. 273, 284 (S.D. Ala. 2006).   There is no obvious inconsistency with the deposition testimony cited; thus, the "sham affidavit" rule is inapplicable.  See, e.g., King v. ADT Sec. Servs., 2007 WL 2713212, *3 (S.D. Ala. Nov 17, 2007); Kerns v. Sealy, 2007 WL 2012867, *10-11 (S.D. Ala. Jul. 6, 2007) (citing Van T. Junkins and Assoc., Inc. v. U.S. Indus., Inc., 736 F.2d 656 (11th Cir. 1984)).  As set forth in King, 2007 WL 2713212, *3:

> …the Eleventh Circuit has recently cautioned that the sham affidavit rule "is applied sparingly because of the harsh effect it may have on a party's case." *Allen v. Board of*

> *Public Educ. for Bibb County,* --- F.3d ----, *8, 2007 WL 2332506 (11th Cir. Aug. 17, 2007) (citation and internal quotations omitted). For that reason, and to avoid depriving the trier of fact of the opportunity to discern which witnesses are telling the truth and when, this Circuit "require [s] the court to find some inherent inconsistency between an affidavit and a deposition before disregarding the affidavit." *Id.* (citation omitted). For any lesser variation in testimony, the proper approach is to test that inconsistency through cross-examination at trial and allow the jury to weigh it in determining the witness's credibility. There being nothing more than a possible inconsistency, and certainly much less than an inherent inconsistency…the sham affidavit rule has no application, and the Motion to Strike is denied as to this passage.

At best, the Housing Board (arguably) presents a "lesser variation in testimony."  Such is a matter to be tested at trial and assessed by a jury, not by the undersigned on summary judgment.

Further, as to the Housing Board's contention that Plaintiffs' Declarations improperly include conclusions of law concerning management duties, invading the province of the court, the undersigned cannot agree.  In the Declarations, Plaintiffs are simply attesting to factual information about their daily activities and duties in the job.  Plaintiffs make no legal conclusions or legal assertions.

Upon consideration, the Court does not find clear and direct contradiction between the Declarations and prior deposition testimony meriting their exclusion.  Thus, the Housing Board's request for the Court to disregard Plaintiffs' Declarations is **DENIED.**

## IV.   **FLSA Violations: The Housing Board**[6]

Plaintiffs[7] allege that they were employees of the Housing Board who worked off the clock in excess of the scheduled 40 hours/week, but did not receive overtime pay in violation of FLSA Section 207(a).

Specifically, in the Complaint, Plaintiffs allege the following FLSA violations:

A. FLSA

---

6  Plaintiffs do not allege FLSA claims against the Personnel Board.  As such, it is **ORDERED** that the portion of the Personnel Board's motion for summary judgment on the FLSA claims is **MOOT.**

7  Weaver does not allege an FLSA claim.

13. Plaintiffs Criswell, Coffman, Knight, McCord, Peacock, and Smiley were hourly employees of MHB for at least three years prior to September 2014, when their employment with MHB ceased.

14. MHB only scheduled Plaintiffs to work forty (40) hours per week but Plaintiffs did not "punch a time clock" and worked "off the clock" for which time they were not paid.

15. During their employment Plaintiffs regularly worked hours during the week and on the weekend for which they were not compensated.

16. Plaintiffs worked in excess of 40 hours per week for which they were not compensated.

17. MHB did not maintain time records on Plaintiffs and, therefore, did not keep a records of overtime hours worked by Plaintiffs.

18. Plaintiffs were required to report to work and begin working prior to the time MHB had scheduled them. Plaintiffs were not paid for this work.

19. Plaintiffs were required to work during their lunch period and were not paid for this time worked.

20. Plaintiffs worked after hours and at night and were not paid for this time worked.

21. Plaintiffs worked on weekends and were not paid for this time worked.

22. For one week out of every seven weeks Plaintiffs were required to be "on call" twenty-four (24) hours each of the seven days and were not paid for either being on-call (standby) or for when they actually worked during this week.

23. Plaintiffs were not paid for any time worked before their scheduled time began, were not paid for any time worked during their lunch period, were not paid for any time worked after their scheduled time stopped, were not paid for any weekend work, were not paid for any call time either while on standby or while actually performing work.

24. Plaintiffs did not received overtime pay as required by Section 207(a) of the FLSA during the weeks they worked more than 40 hours. Plaintiffs' job title was Housing Maintenance Supervisor; however, they did not have any employees of their own and did not have the authority to hire, fire, promote, determine starting pay of, give pay raises to, or discipline any other MHB employee. They did not recommend or determine budgets or policies on behalf of MHB.

25. Plaintiffs were not paid for time spent away from work for any reason including, but not limited to, personal reasons, sickness, and/or vacation unless they had and took accrued sick or vacation pay.

***

A. FLSA

60. Plaintiffs incorporate each and every paragraph above as if fully set out herein.

61. Plaintiffs were not exempt from the overtime provisions of the FLSA.

62. Defendant MHB failed to pay Plaintiffs for time worked which compensable as overtime or otherwise under the FLSA.

63. Defendant MHB's failure to pay Plaintiffs was both unreasonable and in bad faith.

64. This action by Defendant MHB violates Plaintiffs' rights under the FLSA.

65. Plaintiffs have suffered economic damages as a result of Defendant MHB's unlawful practices which were both unreasonable and in bad faith. Plaintiffs have and continue to incur expenses and fees as a result of this unlawful practices.

(Doc. 69 at 4-5).

The Housing Board argues that it is entitled to summary judgment on the FLSA claims because of the applicability of certain overtime pay exemptions.    However, in its reply the Housing Board concedes that Plaintiff Smiley has created an issue of fact as to whether he was

exempt from FLSA overtime during the latter part of his employment.  (Doc. 80 at 19-20).  The Housing Board also concedes that all plaintiffs have "succeeded in creating an issue of fact whether they are entitled to over compensation during the weeks in which MHB imposed a furlough day…."  (Id. at 3).

The FLSA requires that employers pay their employees a minimum wage of no less than $7.25/hour, and that they compensate their employees for overtime pay at a rate of 1½ times the regular rate for each hour worked in excess of 40 hours/week.  29 U.S.C. §§ 206(a), 207(a).  However, the FLSA provides overtime pay exemptions for "[a]ny employee employed in a bona fide executive, administrative, or professional capacity," 29 U.S.C. § 213(a)(1), as those terms are defined by the DOL's regulations.   Even so, the overtime provisions of the FLSA are construed narrowly, and the employer bears the burden of proving the applicability of any exemption.  Hogan, 361 F.3d at 625; Evans v. McClain of Ga., Inc., 131 F.3d 957, 965 (11th Cir. 1997).  The employer must do so "by clear and affirmative evidence."  Klinedinst v. Swift Invs., Inc., 260 F.3d 1251, 1254 (11th Cir. 2001).   Moreover, as set forth in Calvo v. B&R Supermarket, Inc., 63 F.Supp.3d 1369, 1379 (S.D. Fla. 2014) (internal citations omitted):

> "Congress expressly authorized the Secretary of Labor to define the scope of the…exemptions…"To determine whether a genuine issue exists about whether Plaintiff qualified as an "administrative" or "executive" employee…the Court looks to applicable case law and to the Code of Federal Regulations."…"Such legislative regulations are given controlling weight unless they are arbitrary, capricious, or manifestly contrary to the statute."….

In this case, the Housing Board relies upon the Executive, Administrative, and Combination exemptions, as the basis for not paying Plaintiffs overtime.  At the outset, under the DOL rules, three (3) tests must be satisfied for an employee to be considered an exempt employee: 1) the salary basis test, requiring that the employee receive "a predetermined amount" of compensation that is "not subject to reduction because of variations in the quality or quantity

of the work performed" by the employee; 2) the salary level test, requiring that the employee earn at least $455/week, equivalent to $23,600 per year; and 3) the primary duty test, which focuses on whether the employee performs the "primary duty" of an executive, professional or administrative employee. 29 C.F.R. §§ 541.602 (salary basis), 541.600 (salary level), 541.700 (primary duty).  See, e.g., Acs v. Detroit Edison Co., 444 F.3d 763 (6th Cir. 2006).

The salary level test simply requires that the employee earn at least $455/week, equivalent to $23,600 per year, for the exemption to apply. 29 C.F.R. § 541.600.  The salary basis test provides that "…an employee must be paid on a salary basis[]" within the meaning of the DOL regulations.  Avery v. City of Talladega, Ala., 24 F.3d 1337, 1340 (11th Cir. 1994); 29 C.F.R. § 541.602.  An employee is considered "paid on a 'salary basis'" if he regularly receives each pay period on a weekly, or less frequent basis, a predetermined amount constituting all or part of his compensation, which amount is not subject to reduction because of variations in the quality or quantity of the work performed.  29 C.F.R. § 541.602; Hogan, 361 F.3d at 625.  The salary basis of pay is lacking for employees whose "employers have reduced their salaries because of how much or how well they worked." Nicholson v. World Business Network, Inc., 105 F.3d 1361, 1365 (11th Cir. 1997).

The primary duty test provides that for an employee whose salary exceeds $455/week, the exemption applies only where: 1) the employee's primary duty is the performance of exempt work -- office or non-manual work directly related to the management or general business operations of the employer or the employer's customers[;]" and 2) the employee's "primary duty includes the exercise of discretion and independent judgment with respect to matters of

significance." 29 C.F.R. § 541.700; Rock v. Ray Anthony Int'l, LLC, 2010 WL 2089636, *2 (11th Cir. May 26, 2010).[8]

## A.   Executive Exemption

An employee qualifies for the Executive Exemption if: 1) he is compensated on a salary basis at a rate of not less than $455/week (per § 541.602); 2) his primary duty is management of the enterprise in which the employee is employed or of a customarily recognized department or subdivision thereof (per § 541.700); 3) he customarily and regularly directs the work of two (2) or more other employees (per § 541.701); and 4) he has the authority to hire or fire other employees, or whose suggestions/recommendations as to the hiring, firing, advancement, promotion or any other change of status of other employees are given particular weight.   29 C.F.R. § 541.100.  All of these requirements must be met for the Executive Exemption to apply.

### 1.   Salary Basis

As to "salary basis," the Housing Board contends that such is met because Plaintiffs' pay was reduced due to absences from work[9] and budget-related furlough days -- which they contend are allowed actions by public agencies.  (Doc. 66 at 32-33).  Plaintiffs do not appear to dispute that the salary basis was met.  Plaintiffs also "do not dispute that they were compensated at a rate of not less than $445 a week."  (Doc. 73 at 3).  As such, Plaintiffs have conceded that the salary basis prong is satisfied for regular work days/periods (non-furlough periods) alleged in the

---

[8] "Factors to consider when determining the primary duty of an employee include, but are not limited to, the relative importance of the exempt duties as compared with other types of duties; the amount of time spent performing exempt work; the employee's relative freedom from direct supervision; and the relationship between the employee's salary and the wages paid to other employees for the kind of nonexempt work performed by the employee."  29 C.F.R. § 541.700(a).  Additionally, "employees who spend more than 50 percent of their time performing exempt work will generally satisfy the primary duty requirement. Time alone, however, is not the sole test, and nothing in this section requires that exempt employees spend more than 50 percent of their time performing exempt work. Employees who do not spend more than 50 percent of their time performing exempt duties may nonetheless meet the primary duty requirement if the other factors support such a conclusion." Id. § 541.700(b).

[9] Arguing that Personnel Board Local Act 470 requires that pay be reduced when Plaintiffs took personal or sick leave after his/her accrued leave had been exhausted.  (Doc. 66 at 32).

Complaint.

2.    Primary Duty as Management

To satisfy the "primary duty is management" prong, a plaintiff's primary duty is management of the enterprise in which the employee is employed or of a customarily recognized department or subdivision thereof (per § 541.700).[10]   The Housing Board contends that primary duty test is satisfied by a reading of Plaintiffs' job descriptions and thus:

> ….each plaintiff's primary responsibility was supervising maintenance personnel working in one or more of the building trades, which was work directly related to assisting with running MHB's operations. Each Maintenance Supervisor was responsible for: planning and assigning work to the maintenance staff, and inspecting their completed work for quality control purposes; administering MHB's work order system at his/her site, including assigning work orders, and closing them in MHB's system; controlling inventory for his/her site; maintaining productivity records on their maintenance staff – called Time-In-Motion; preparing and/or signing annual Service Ratings for the employees under their supervision; dealing with employee complaints or concerns; and initiating formal disciplinary action when required…Thus each was engaged in management or work directly related to management.
> ***
> Holding independent responsibility for the maintenance operations of an apartment complex or group of complexes, the Maintenance Supervisors exercised discretion and independent judgment.

(Doc. 66 at 35, 39).  Additionally, the Housing Board – relying heavily on the Declaration of Neese, the Director of Maintenance (Doc. 66 at 35-36) -- contends that each plaintiff's primary responsibility matched their job description.   (Doc. 66 at 35; Doc. 51-25 (Decltn Neese)).

Specifically, according to Neese, as of 2000, the Housing Board assigned each Maintenance Supervisor to an apartment complex or property, and that each plaintiff had independent responsibility for maintenance operations at that property, including day-to-day repairs, making the units ready between tenants, curb appeal, and performing ongoing capital

---

10 "Management" includes directing the work of employees; maintaining production records; appraising employees' productivity; handling employee complaints and grievances; disciplining employees; planning the work; apportioning the work among the employees; determining the type of materials, supplies, machinery, equipment or tools to be used or merchandise to be bought, stocked and sold; and controlling the flow and distribution of materials or merchandise and supplies. 29 CFR § 541.102.

improvements.   (Doc. 51-25 (Decltn. Neese)).  The maintenance staff assigned to each site (maintenance mechanics, painters, and public service workers) reported directly to the Maintenance Supervisor for the property.  (Id.)  The primary job of a Maintenance Supervisor was to supervise building and maintenance work in one or more of the building trades, and each was responsible for: 1) planning/assigning work to maintenance staff and inspecting completed work for quality control purposes; 2) administering the Housing Board's work order system at his site, including assigning work orders and closing them in the system; 3) controlling inventory for his site; 4) maintaining productivity records on their maintenance staff – called Time-In-Motion; 5) preparing and/or signing annual Service Ratings for the employees under their supervision; 6) dealing with employee complaints or concerns; and 7) initiating formal disciplinary action when required.  (Id.; Doc. 58-1 (Decltn. Bryant)).  Additionally, at times, the Maintenance Supervisors performed hands-on maintenance, at their own choice, and they remained responsible for the supervision of their maintenance operation even when so engaged. (Doc. 52-25 (Decltn. Neese)). Moreover, Maintenance Supervisors had responsibility regarding after-hours service requests by Housing Board tenants: when tenants called for service after-hours, they received notification from the Housing Board answering service and they were then responsible for calling the tenant, determining whether the request justified an after-hours visit, and, if so, dispatching the on-call maintenance staff member to perform the maintenance.  (Id.) Further, the productivity records of Plaintiffs Coffman, Criswell, Knight, McCord, Peacock and Smiley indicate that each spent more than 50% of his/her time on supervisory duties.  (Doc. 51-25 and 51-26 (Delctn. Neese)).

        In stark contrast, Plaintiffs assert that they spent a small fraction of their time performing management related duties, and that management was not their primary duty.  First, Linda Day,

the Director of Housing Management at the Housing Board when Plaintiffs were Maintenance

Supervisors (through her retirement), asserts that:

- Plaintiffs spent about 10-15% of their time (no more than 20%) managing employees
- Plaintiffs had "little to no input into hiring, firing, promotions, demotions or changing the status of any employees who worked at the Housing Board and their suggestions and/or recommendations were not given any particular weight [for same]" and
- Maintenance employees worked independently.

(Doc. 75-1 (Decltn. Day).  Second, Plaintiffs, through their own Declarations, assert that:

- They spent 10-15% of their time managing employees
- The majority of their time was spent looking at time on work orders
- They did not supervise or control staff work
- They had no independent responsibility for maintenance operations
- They did not make or supervise daily repairs
- They did not supervise or control making the units ready for tenants
- They did  not supervise curb appeal and had no say in ongoing capital improvements
- Maintenance staff went out and filled out the orders, returning them to Plaintiffs, who recorded how much time was spent completing same
- Some picked up garbage/trash off the streets but all other curb appeal work was contracted out and they lacked any authority over independent contractors. Some may have signed documents noting contractor's work was complete but had no influence over those contractors
- On a daily basis, they came into work, reviewed work orders prepared by someone else, and distributed them to maintenance staff and kept up with their time
- They never exercised discretion or independent judgment with significant matters
- They sporadically/occasionally inspected maintenance staff work for quality control, but did not supervise or control their work and/or have independent responsibility for maintenance operations.

(Docs. 75-2 (Decltn. Coffman), 75-3 (Decltn. Criswell), 75-4 (Decltn. Knight), 75-5 (Decltn.

McCord), 75-6 (Decltn. Smiley), 75-7 (Decltn. Peacock)).

Clearly then, the parties present dramatically different versions of Plaintiffs' duties,

notably the primary duty of each, such that genuine issues of material fact exist.  Because all four

(4) prongs of the executive exemption must be satisfied for it to apply, and there is an issue of

fact as to the second, the Court need not address the remaining prongs.  At this point, the

Housing Board's motion is **DENIED**.

**B.    Administrative Exemption**

Concerning the Administrative Exemption, an employee may qualify if: 1) he is compensated on a salary or fee basis at a rate of not less than $455/week (defined by § 541.602); 2) his primary duty is the performance of office or non-manual work directly related to the management or general business operations of the employer or the employer's customers (defined by § 541.700); and 3) the employee's primary duty includes the exercise of discretion and independent judgment with respect to matters of significance (defined by § 541.700). 29 C.F.R. § 541.200. All three (3) prongs must be satisfied for the exemption to apply. Additionally, per Crabtree v. Volkert, Inc., 2012 WL 6093802, *7 (S.D. Ala. Dec. 7, 2012):

> … "[t]o qualify for the administrative exemption, an employee's primary duty must include the exercise of discretion and independent judgment with respect to matters of significance." 29 C.F.R. § 541.202(a). The regulations emphasize that this is a highly fact-bound inquiry. *See* 29 C.F.R. § 541.202(b) (explaining that "discretion and independent judgment" must be evaluated "in the light of all the facts involved in the particular employment situation in which the question arises," and reciting lengthy list of relevant factors). Three noteworthy clarifications of the "discretion and independent judgment" concept are (i) that the term "implies that the employee has authority to make an independent choice, free from immediate direction or supervision;" (ii) that the term excludes the performance of "mechanical, repetitive, recurrent or routine work;" and (iii) that the employee's primary duty "must be more than the use of skill in applying well-established techniques, procedures or specific standards described in manuals or other sources." 29 C.F.R. § 541.202(c), (e).

As to the first prong of salary, Plaintiffs have conceded this prong is satisfied (for non-furlough weeks). For the second prong, primary duty, such duty must be the performance of office or non-manual work directly related to the management or general business operations of the employer or the employer's customers (defined by § 541.700). As stated *supra*, issues of fact surround whether Plaintiffs' work directly related to management and thus this prong is not satisfied on summary judgment. And even assuming *arguendo,* for purposes of summary

judgment, that the Housing Board could satisfy the "directly related to the general business operations" alternative of this prong, there exists an issue of fact as to the third prong.

Specifically, the third prong – whether the employee's primary duty includes the exercise of discretion and independent judgment with respect to matters of significance – is also in dispute. The exercise of discretion and independent judgment implies that the employee has authority to make an independent choice, free from immediate direction or supervision. However, an employee can exercise "discretion and independent judgment" even if his decisions or recommendations are reviewed at a higher level:

> the term "discretion and independent judgment" does not require that the decisions made by an employee have a finality that goes with unlimited authority and a complete absence of review. The decisions made as a result of the exercise of discretion and independent judgment may consist of recommendations for action rather than the actual taking of action. The fact that an employee's decision may be subject to review and that upon occasion the decisions are revised or reversed after review does not mean that the employee is not exercising discretion and independent judgment.

29 CFR § 541.202(c).

The Housing Board contends that Plaintiffs exercised discretion and independent judgment because they held independent responsibility for the maintenance operations of an apartment complex or group of complexes. Plaintiffs assert they did not, and specifically and repeatedly contend that they exercised no independent discretion or independent judgment. (See supra; Doc. 75-2 through 75-7 (Decltns. Plaintiffs). As this dispute creates an issue of fact as to the third prong, the Housing Board' motion is **DENIED** as to this exemption.

C.    **Combination Exemption**

29 C.F.R. § 541.708 provides that "[e]mployees who perform a combination of exempt duties as set forth in the regulations in this part for executive, administrative…employees may qualify for exemption. Thus, for example, an employee whose primary duty involves a

combination of exempt administrative and exempt executive work may qualify for exemption. In other words, work that is exempt under one section of this part will not defeat the exemption under any other section." Additionally, the DOL regulations provide for tacking different exemptions together for a combined exemption when "(1) an employee performs more than one type of work that would be exempt except that (2) neither type of work alone can be termed the employee's primary duty, but (3) all of the putatively exempt work taken together constitutes the employee's primary duty." See, e.g., Cobb v. Finest Foods, Inc., 582 F. Supp. 818, 822 (E.D. La. 1984), aff'd 755 F.2d 1148 (5th Cir. 1985).

On summary judgment, the Housing Board provides no additional factual support for this exemption's applicability, but instead summarily asserts that it applies. (Doc. 66 at 40). Presumably, this assertion is based on the purported applicability of certain aspects of the executive and administrative exemptions, which the Housing Board briefed in its motion. However, because there are genuine issues of material fact concerning the applicability of *those* exemptions, see supra, there are likewise issues of fact for the combination exemption which "cobbles together" different factors *from the those exemptions*. See, e.g., Kuntsmann v. Aaron Rents, Inc., 903 F.Supp.2d 1258, 1265-1266 (N.D. Ala. 2012) (discussing the cobbling together of exemptions to satisfy the combination exemption); Talbott v. Lakeview Ctr., Inc., 2008 WL 4525012, *8 (N.D. Fla. Sept. 30, 2008) ("[b]ecause of the court's finding that summary judgment…is not appropriate for either the administrative or learned professional exemptions,…summary judgment as to the application of the combination exemption will also be denied[]"). As such, the Housing Board's motion is **DENIED** as to this exemption.

## V.   ADEA and AADEA: The Housing Board[11]

---

[11] Plaintiffs do not allege AADEA/ADEA claims against the Personnel Board. As such, it is **ORDERED** that the portion of the Personnel Board's motion for summary judgment on such claims is **MOOT.**

In the Complaint, Plaintiffs allege disparate impact and disparate treatment violations of

the ADEA and AADEA against the Housing Board as follows:

> Criswell, Coffman, Weaver, Knight, Smiley, Peacock, and McCord were each over the age of 40 and had each worked for [the Housing Board]…in excess of twenty (20) years.

> During the Summer of 2014, MHB, citing financial reasons, sought to terminate, lay off, or otherwise rid itself of employees and, with respect to employees in the Classified Service including [Plaintiffs]…and sought approval from the MCPB to take such action.

> In September 2014, [Plaintiffs]…were informed that they were being laid off which…amounts to their termination.

> [Plaintiffs]…each had held numerous positions prior to their terminal position of Housing Maintenance Supervisor and were qualified and able to perform duties in multiple positions including, but not limited to, Public Service Worker 1, Public Service Worker 2, and Maintenance Mechanic. Each would have accepted a lower paying job for which they were qualified in order to maintain employment; however, none were offered any opportunity to remain employed under any circumstances.

> The procedure used by MHB, Rule XIII of the Rules and Regulations of the Personnel Board for Mobile County, Alabama, and the implementation of that procedure had a disparate impact in that it resulted in older employees in the protected class being identified for lay off including [Plaintiffs]…

> Younger, less qualified employees were not laid off or considered for lay-off.

> [Plaintiffs]…maintain that they were treated differently and less favorably than other similarly situated but younger employees in the determination of criteria for lay off as well as the application of that criteria.

> Absent other non-legitimate and/or illegal reasons, [Plaintiffs]…but for their age, would still be employed.

(Doc. 69 at 5-6).

The standards governing AADEA cases are identical to those established for the ADEA.

See, e.g.,  Taylor v. City of Demopolis, 2005 WL 3320735, *8 (S.D. Ala. Dec. 6, 2005); Bonham

v. Mortgage Inc., 129 F. Supp. 2d 1315 (M.D. Ala. 2001).  The AADEA provides "the remedies,

defenses, and statutes of limitations, under this article shall be the same as those authorized by"

the ADEA, with the only noted exception being that plaintiffs are not required to pursue an

administrative remedy prior to filing suit.  Ala. Code § 25-1-29.  Id.  Thus, the same analytical

framework applies to both.  See, e.g., Robinson v. Ala. Cent. Credit Union, 964 So.2d 1225, 1228 (Ala. 2007).

The ADEA prohibits an employer from discriminating on the basis of age. 29 U.S.C. § 623(a).  Specifically, the ADEA makes it unlawful for an employer to discriminate against an employee due to his being 40 years of age or older – i.e., to fail or refuse to hire him or to discharge him because of his age.  29 U.S.C. §§ 623(a)(1); Ramsey v. Chrysler First, Inc., 861 F.2d 1541, 1543-1544 (11th Cir. 1988).  A plaintiff may support a claim of age discrimination with either direct or circumstantial evidence.  Mora v. Jackson Mem'l Found., Inc., 597 F.3d 1201, 1204 (11th Cir. 2010); Pace v. S. Ry. Sys., 701 F.2d 1383, 1388 (11th Cir. 1983).

Where there is only circumstantial evidence, courts apply a variation of the framework in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).  See, e.g., Chapman v. AI Transp., 229 F.3d 1012, 1024 (11th Cir. 2000); Damon v. Fleming Supermarkets of Fla., Inc., 196 F.3d 1354, 1358 (11th Cir. 1999).  Under McDonnell Douglas, the plaintiff has the initial burden of establishing a prima facie case of age discrimination.  Chapman, 229 F.2d at 1024.  In an ADEA case for failure to hire, a plaintiff must establish that: 1) he was a member of the protected group (between the ages of 40–70; 2) he was subject to adverse employment action;[12] 3) a substantially younger person filled the position that he sought or from which he was discharged; and 4) he was qualified to do the job for which he was rejected.  Id. See also Damon, 196 F.3d at 1359; Hudson v. Shaw Environmental & Infrastructure, Inc., 267 Fed. Appx. 892, 893 (11th Cir. 2008).  If the plaintiff establishes his prima facie case, the employer must articulate a legitimate, nondiscriminatory reason for the challenged employment action. Chapman, 229 F.3d at 1024.

---

[12] "An adverse employment action is an ultimate employment decision, such as…failure to hire, or other conduct that 'alters the employee's compensation, terms, conditions, or privileges of employment, deprives him or her of employment opportunities, or adversely affects his or her status as an employee.'" Nettles v. LSG Sky Chefs, 211 Fed. Appx. 837, 838–839 (11th Cir. 2006).

Then, the plaintiff must show that the employer's stated reason is a pretext for unlawful discrimination -- *i.e.,* the plaintiff has the opportunity to come forward with evidence, including the previously produced evidence establishing the prima facie case, sufficient to permit a reasonable factfinder to conclude that the reasons given by the employer were not the real reasons for the adverse employment decision. Kragor v. Takeda Pharm. Am., Inc., 702 F.3d 1304, 1307 (11th Cir. 2012); Crawford v. City of Fairburn, 482 F.3d 1305, 1308 (11th Cir. 2007); Combs v. Plantation Patterns, 106 F.3d 1519, 1528 (11th Cir. 1997).

A plaintiff may overcome the employer's asserted legitimate reasons "either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." Taylor v. Runyon, 175 F.3d 861, 867 (11th Cir. 1999). To meet his burden of showing pretext, the plaintiff must rebut *all* legitimate non-discriminatory reasons that the employer proffers for the adverse action. Id.[13] A plaintiff "must meet [the] reason head on and rebut it, and the employee cannot succeed by simply quarreling with the wisdom of that reason." Chapman, 229 F.3d at 1030. The Court's inquiry, ultimately, "is limited to whether the employer gave an honest explanation of its behavior." Id. A plaintiff's showing that the employer was incorrect in its decision is insufficient: if the employer honestly believed the employee engaged in misconduct, even if mistaken, no discrimination exists. Elrod v. Sears, Roebuck & Co., 939 F.2d 1466, 1470 (11th Cir. 1991).

---

13 A plaintiff can accomplish this by pointing to "weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions" in the employer's explanation, Brooks v. County Comm'n of Jefferson Cty., Ala., 446 F.3d 1160, 1163 (11th Cir. 2006), and/or by "either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence[,]" Kragor v. Takeda Pharm. Am., Inc., 702 F.3d 1304, 1308 (11th Cir. 2012). Additionally, a plaintiff may produce evidence that "permits the jury to reasonably disbelieve the employer's proffered reason." Steger v. Gen. Elec. Co., 318 F.3d 1066, 1079 (11th Cir. 2003). "But a reason cannot...be 'a pretext *for discrimination* 'unless it is shown *both* that the reason was false, *and* that discrimination was the real reason." St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 515 (1993) (emphasis in original).

Further, in Gross v. FBL Fin. Servs., Inc., 557 U.S. 167, 176 (2009), the United States Supreme Court held that the language "because of" in the ADEA means that a plaintiff has to prove that age discrimination is the "but for" cause of the adverse act.  Following Gross, the Eleventh Circuit reaffirmed the propriety of evaluating ADEA claims based on circumstantial evidence under the McDonnell Douglas framework.  See e.g., Mora v. Jackson Mem. Fdtn., Inc., 597 F.3d 1201 (11th Cir. 2010) (explaining that under the ADEA after Gross, an "employer either acted 'because of' the plaintiff's age or it did not[]").[14]  However, "it is a long-recognized tenet of tort law that a plaintiff's injury can have multiple 'but-for' causes, each of which may be sufficient to support liability. Requiring proof that a prohibited consideration was the 'but for' cause of an adverse job action does not equate to a burden to show that such consideration was the 'sole' cause….This remains so even after Gross. Moreover, a plaintiff is authorized to plead and pursue alternative theories of recovery, even if they are inconsistent…."  Bailey v. City of Huntsville, Ala., 2012 WL 2047672, *9 (N.D. Ala. 2012).   Thus, Gross does not place a heightened evidentiary requirement on ADEA plaintiffs to prove age was the "sole" cause of the adverse employment action. Pearson v. Lawrence Med. Ctr., 2012 WL 5265774 (N.D. Ala. Oct. 24, 2012); Goodridge v. Siemens Energy, Inc., 276 F.R.D. 540, 542 and n. 1 (N.D. Ala. 2011); Ross v. Renaissance Mont. Hotel & Spa at the Convention Ctr., 2012 WL 1030323, *4-5, report adopted as modified, 2012 WL 1032618 (M.D. Ala. Feb. 27, 2012); Archie v. Home–Towne Suites, LLC, 749 F.Supp.2d 1308, 1315 (M.D. Ala. 2010); Freeman v. Koch Foods of Ala., 2010 WL 9461668, *2 (M.D. Ala. Jun. 15, 2010); Collins v. Fulton Cty. Sch. Dist., 2012 WL 7802745, *17-18 (N.D. Ga. Dec. 26, 2012).

---

14 In Mora the Eleventh Circuit stated that an ADEA plaintiff must now "establish 'but for' causality," such that "no 'same decision' affirmative defense can exist: the employer either acted 'because of' the plaintiff's age or it did not." Id. at 1204 (citing Gross, 557 U.S. at 180).  The Eleventh Circuit concluded, it was unnecessary to consider the district court's analysis of the employer's "same decision" affirmative defense. Id. at 1204.

Finally, in <u>Sims v. MVM, Inc</u>., 704 F.3d 1327, 1332-1333 (11th Cir. 2013), the Eleventh Circuit clarified that the <u>McDonnell Douglas</u> framework is not the *sine qua non* for a plaintiff to survive summary judgment in a discrimination case.  <u>See</u> <u>Smith v. Lockheed Martin Corp.</u>, 644 F.3d 1321, 1328 (11th Cir. 2011).  Instead, "the plaintiff will always survive summary judgment if he presents circumstantial evidence that creates a triable issue concerning the employer's discriminatory intent."  <u>Id</u>.  A triable issue of fact exists "if the record, viewed in a light most favorable to the plaintiff, presents 'a convincing mosaic of circumstantial evidence that would allow a jury to infer [ ] intentional discrimination by the decisionmaker.'" <u>Id</u>.  Nevertheless, the burden of persuasion always remains on a plaintiff in an ADEA case to proffer evidence sufficient to permit a reasonable fact finder to conclude that the discriminatory animus was the "but-for" cause of the adverse employment action. <u>Gross</u>, 557 U.S. at 176.

For disparate treatment, such a claim arises "when an employer treats some people less favorably because of a protected characteristic, such as race, religion, sex, or in our case, age. To prove this type of claim, a plaintiff must establish that the employer had the intent to discriminate." <u>Villarreal v. R.J. Reynolds Tobacco Co</u>., 806 F.3d 1288, 1293 (11th Cir. 2015). "When a plaintiff alleges disparate treatment, 'liability depends on whether the protected trait (under the ADEA, age) actually motivated the employer's decision.' That is, the plaintiff's age must have 'actually played a role in [the employer's decisionmaking] process and had a determinative influence on the outcome.'" <u>Reeves v. Sanderson Plumbing Products, Inc</u>., 530 U.S.133, 141 (2000) (citations omitted).

For disparate impact, such a claim arises when an employer "uses 'practices that are facially neutral in their treatment of different groups but that in fact fall more harshly on one group than another[]' [--] [n]o proof of discriminatory intent is required for disparate impact

claims." <u>Villarreal</u>, 806 F.3d at 1293.  The plaintiff must ultimately show statistical evidence that the employment practice impacts members of a protected group.  <u>E.E.O.C. v. Joe's Stone Crab, Inc.</u>, 220 F.3d 1263, 1274 (11th Cir. 2000).  A prima facie case of age discrimination based on disparate impact requires a plaintiff to show: 1) a specific, facially-neutral employment policy or practice; 2) a significant statistical disparity among members of different [age] groups; and 3) a causal nexus between the specific policy or practice and the statistical disparity.  <u>Cardelle v. Miami Beach Fraternal Order of Police</u>, 593 Fed. Appx 898, 901 (11th Cir. 2014).  <u>See also</u> <u>Meacham v. Knolls Atomic Power Lab</u>., 554 U.S. 84, 99 (2008).

On summary judgment, Plaintiffs conclusorily address their AADEA/ADEA claims in a seven (7) sentences, failing to submit, cite, or reference any evidence in support:

> Plaintiffs….were all within the protected class and older than employees who were maintained in the position of maintenance mechanic, the position to which they were qualified to assume and had, in fact, worked for years prior to being promoted to Supervisor.  Rather than allow Plaintiffs to assume the maintenance mechanic position and displace younger, less senior employees who were not as skilled as Plaintiffs, the…[Housing Board] opted for their lay off.  Defendant [Housing Board] at all times was aware of the ages of Plaintiffs and the obligations under the acts that prohibit employers from age discrimination in employment.

(Doc. 73 at 13-14).  Plaintiffs' complete failure to submit and/or cite to any evidentiary support, to assert any factual allegations (*e.g.*, direct or circumstantial evidence, age-based comments/statements, identification of similarly situated younger employees treated more favorably, statistical evidence, examples of age bias, etc.) and/or to provide any materials in support, undermines their AADEA/ADEA claims to the point of abandonment.[15]

---

15 "Pursuant to Eleventh Circuit case law, a plaintiff's failure to support a claim constitutes abandonment of that claim. <u>Coal. for the Abolition of Marijuana Prohibition v. City of Atlanta</u>, 219 F.3d 1301, 1326 (11th Cir. 2000) ("[F]ailure to brief and argue [an] issue during the proceedings before the district court is grounds for finding that the issue has been abandoned[]"); <u>Wilkerson v. Grinnell Corp.</u>, 270 F.3d 1314, 1322 (11th Cir. 2001) (claim that was included in complaint but not again raised until the plaintiff's supplemental reply brief is abandoned[]"]  <u>Davis v. Edwards Oil Co. of Lawrenceburg, Inc.</u>, 2012 WL 5954139, *4 (N.D. Ala. Nov. 28, 2012).  <u>See also</u> <u>generally</u> <u>Road Sprinkler Fitters Local Union No. 669 v. Independent Sprinkler Corp.</u>, 10 F.3d 1563, 1567 (11th Cir. 1994) (same); <u>Floyd v. Home Depot USA, Inc.</u>, 274 Fed. Appx. 763, 765 (11th Cir. 2008) (same); <u>Resolution Trust Corp.</u>

Moreover, even if plaintiff has established a prima facie case, the Housing Board has articulated a legitimate, nondiscriminatory reason for the challenged employment action: severe funding cuts obligated the Housing Board to make equally severe budget cuts, including imposing furlough days and reducing its force by restructuring its maintenance operations and eliminating middle-management.  Plaintiffs have failed to even attempt to show that this reason is pretextual or unworthy of credence.

As a result, for disparate treatment, the Court is unable to piece together a "convincing mosaic" (Smith, 644 F.3d at 1328) from which a reasonable jury could infer an unlawful discriminatory intent in the Housing Board's decisions.  Plaintiffs did not present any evidence of age discrimination, much less any such evidence tying the Housing Board's decisions to age bias.  See, e.g., Connor v. Bell Microproducts-Future Tech, Inc., 492 Fed. Appx. 963, 967 at n. 1 (11th Cir. 2012) (finding insufficient evidence of age discrimination under the Smith standard). With regard to disparate impact, Plaintiffs have cited no employment policy or practice, no significant statistical disparity among members of different age groups, and no causal nexus between a policy/practice and any alleged statistical disparity. Accordingly, the Housing Board's motion on Plaintiffs' **AADEA/ADEA** claims is **GRANTED.**

## VI.   State Law Claims of Plaintiffs Coffman, Criswell, Knight, McCord, Peacock and Smiley[16]

Plaintiffs allege breach of contract, intentional misrepresentation/fraud, promissory fraud, promissory estoppel and equitable estoppel.  (Doc. 69 at 6-14).  Defendants move for summary judgment as to these claims, on a variety of grounds that are well developed and persuasive. (Doc. 66 at 13-25 and Doc. 55 at 11-20).

---

v. Dunmar Corp., 43 F.3d 587, 599 (11th Cir. 1995) (same).

16 Plaintiff Weaver dismissed his state law claims.  (Docs. 50, 57).

However, in response to summary judgment, Plaintiffs engage in no discussion of the legal elements for these claims and only reference them once, collectively, as their "common law claims."  Rather Plaintiffs argue, most relevantly in support of their breach of contract claim, that: 1) Plaintiffs received their jobs as maintenance supervisors through a promotion; 2) there is no "functional" difference in a promotion and an appointment through the open competitive process; and 3) Plaintiffs could have been demoted instead of laid-off.

As to Plaintiffs' contention that they received their jobs through promotion, there are no facts to support this claim.  In contrast, the Defendants have presented evidence that the Plaintiffs were appointed to their jobs through an open competitive process (meaning the general public could apply) as opposed to a promotional test (which is limited to current employees). (Doc. 66 at 9).

Moreover, Plaintiffs' contention that there is no "functional" difference between getting a job through a promotional test and getting a job through open competitive process is of no moment.  Whether it is sensible to distinguish between the methods is not the issue.  The fact is, the Personnel Board Rules do distinguish between the methods and provide additional rights for jobs obtained through a promotional test.  Along the same lines, it also does not matter whether plaintiffs "could" have been demoted.  The question is whether they had a right to be demoted as opposed to laid-off.  Because the Plaintiffs fail to adequately support their claim that they were promoted "through a promotional test," their claim that Defendants breached a contract by failing to demote rather than lay-off the Plaintiffs fail.

Plaintiffs do not specifically address the remaining state law claims.  Moreover, Plaintiffs do not address the summary judgment arguments raised by Defendants concerning these claims.  As previously stated, the Court finds the arguments of the Defendants persuasive and adopts the

reasoning found in Doc. 66 at 13-25 and Doc. 55 at 11-20 as the finding of the Court.   As such,

the Defendants' respective motions on these claims is **GRANTED.**

## VII.   Conclusion

As such, it is **ORDERED** that:

1) the Housing Board's motion for summary judgment (Docs. 51-53, 66) is **GRANTED in part** and **DENIED in part** as follows: **DENIED** as to Plaintiffs' FLSA claims;[17] **GRANTED** as to Plaintiffs' AADEA/ADEA claims;[18] and **GRANTED** as to Plaintiffs' state law claims for breach of contract, intentional misrepresentation/fraud, promissory fraud, promissory estoppel and equitable estoppel; and

2) the Personnel Board's motion for summary judgment (Docs. 54, 55, 58, 59) is **GRANTED in part** and **MOOT in part** as follows: **MOOT** as to Plaintiffs' FLSA claims;[19] **MOOT** as to Plaintiffs' AADEA/ADEA claims;[20] **GRANTED** as to Plaintiffs' state law claims for breach of contract, intentional misrepresentation/fraud, promissory fraud, promissory estoppel, and equitable estoppel.

Thus, only the FLSA claims of Criswell, Coffman, Knight, McCord, Peacock and

Smiley, against the Housing Board remain in this case to proceed to trial.

**DONE** and **ORDERED** this **23rd** day of **February 2016**.

/s/ Kristi K. DuBose
**KRISTI K. DuBOSE**
**UNITED STATES DISTRICT JUDGE**

---

17 Excluding Weaver as he previously dismissed his FLSA claim against the Housing Board.

18 Excluding Weaver as he previously dismissed his AADEA/ADEA claims against the Housing Board.

19 Excluding Weaver as he previously dismissed his FLSA claim against the Personnel Board.

20 Excluding Weaver as he previously dismissed his AADEA/ADEA claims against the Personnel Board.